## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **TRANSCEND SHIPPING SYSTEMS, LLC,** <br> *Plaintiff,* <br><br> v. <br><br> **ZIM INTEGRATED SHIPPING SERVICES LTD.,** <br> *Defendant.* | **Case No. 2:21-cv-108** <br><br> **JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Transcend Shipping Systems, LLC ("Transcend") hereby files this Original Complaint for Patent Infringement against ZIM Integrated Shipping Services Ltd. ("ZIM"), and alleges, upon information and belief, as follows:

## THE PARTIES

1.  Transcend is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 600 S. Dixie Highway, Suite 605, West Palm Beach, Florida 33401.

2.  Upon information and belief, ZIM Integrated Shipping Services Ltd. is a limited company organized and existing under the laws of Israel with its principal office at 9 Andrei Sakharov St., P.O. Box 15067, Haifa, Israel 3190500.

3.  Upon information and belief, ZIM also maintains an office in Texas at 1111 North Loop West, Suite 900, Houston, Texas 77009.

## JURISDICTION AND VENUE

4.  Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

5.    The Court has personal jurisdiction under the Texas Long Arm Statute and the Due Process Clause of the U.S. Constitution over ZIM because they are present within or have minimum contacts within the State of Texas, including the Eastern District of Texas.

6.    ZIM has sought protection and benefit from the laws of the State of Texas; ZIM regularly conducts business within the State of Texas and within the Eastern District of Texas; and Plaintiff's cause of action arises directly from ZIM's business contacts and other activities in the State of Texas and in the Eastern District of Texas.

7.    More specifically, ZIM, directly and/or through intermediaries, ship, distribute, use, offer for sale, sell, and/or advertise products and services in the United States, the State of Texas, and the Eastern District of Texas including but not limited to the Accused Instrumentalities as detailed below. Upon information and belief, ZIM has committed patent infringement in the State of Texas and in the Eastern District of Texas. ZIM solicits and has solicited customers in the State of Texas and in the Eastern District of Texas. ZIM has paying customers, who are residents of the State of Texas and the Eastern District of Texas, who each use and have used the ZIM's products and services in the State of Texas and in the Eastern District of Texas.

8.    As an example, ZIM maintains an office in Texas at 1111 North Loop West, Suite 900, Houston, Texas 77009. (See Figure 1 below). Upon information and belief, the registered agent for ZIM in Texas is CT Corporation System at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.



Figure 1[1]

9.     Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400(b).

10.    Venue is also proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c)(3) because Orient Overseas Container Line Ltd. is not a resident of the United States and therefore may be sued in any judicial district.

## PATENTS-IN-SUIT

11.    Transcend Shipping Systems, LLC is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 7,253,731 ("the '731 Patent"); 7,482,920 ("the '920 Patent"); 9,847,029 ("the '029 Patent"); 10,181,109 ("the '109 Patent"); and 10,796,268 ("the '268 Patent") (hereinafter collectively referred to as "the Transcend Patents").

12.    The Transcend Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

13.    The Transcend Patents each include numerous claims defining distinct inventions.

---

[1] Source, as visited on March 30, 2021:  https://www.zim.com/global-network/americas/usa/usa-contacts?branch=USIAH01&countrycode=USA

14. The priority date of each of the Transcend Patents is at least as early January 23, 2001. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

15. Plaintiff alleges infringement on the part of ZIM of each of the Transcend Patents.

16. The '731 Patent relates generally to an apparatus, including a shipment conveyance device, associated with a shipment, which is a shipping a container, pallet, or tote, a memory device, located at the shipment conveyance device, in which information regarding the shipment is stored, a global positioning device, located at the shipment conveyance device, which determines a position or location of the shipment conveyance device, a processing device which processes information regarding the shipment and/or shipment conveyance device in response to an occurrence of an event or in response to a request for information and generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of the shipment, a shipment temperature, or an impact or force on the shipment conveyance device, and a transmitter, located at the shipment conveyance device, which transmits the message to a communication device. *See* Abstract, '731 Patent.

17. The '920 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, pallet, piece of luggage, or tote, a memory device located in, on, or at, the shipment conveyance device which stores information regarding the shipment conveyance device, a global positioning device located in, on, or at, the shipment conveyance device which determines a position or location of the shipment conveyance device, a processing device which processes information regarding the shipment conveyance device in response to an occurrence of an event or a request for information and which generates a

message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or transportation involving the shipment conveyance device, a temperature, or an impact or force on the shipment conveyance device, and a transmitter located in, on, or at, the shipment conveyance device which transmits the message to a communication device. *See* Abstract, '920 Patent.

18. The '029 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, pallet, or piece of luggage, a memory device located in, on, or at, the shipment conveyance device which stores information regarding the shipment conveyance device, a global positioning device which determines a position or location of the shipment conveyance device, a processing device which processes information regarding the shipment conveyance device in response to an occurrence of an event or a request for information and which generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or transportation involving the shipment conveyance device, a temperature, or an impact or force on the shipment conveyance device, and a transmitter located in, on, or at, the shipment conveyance device which transmits the message to a communication device. *See* Abstract, '029 Patent.

19. The '109 Patent relates generally to an apparatus, including a shipment conveyance device, wherein the shipment conveyance device is a shipping container, pallet, or piece of luggage; a receiver; a global positioning device which is located in, on, or at, the shipment conveyance device and which determines a position or location of the shipment conveyance device; a processor which generates a message in response to an occurrence of an event or in response

to a request for information regarding the shipment conveyance device, wherein the request for information is automatically received by the receiver, wherein the message contains information regarding a position or location of the shipment conveyance device; and a transmitter which is located in, on, or at, the shipment conveyance device and which transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message. *See* Abstract, '109 Patent.

20.     The '268 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, a pallet, or a piece of luggage; a global positioning device, located in, on, or at, the shipment conveyance device, which determines a position or location of the shipment conveyance device; a processor which generates a message in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device which request is automatically received by a receiver, and which message contains information regarding a shipment of the shipment conveyance device; and a transmitter, located in, on, or at, the shipment conveyance device, which transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message. *See* Abstract, '268 Patent.

21.     The claims of the Transcend Patents are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Transcend Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

22.   The '731 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '731 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 340/539.13, 340/568.1 and 340/572.1.

23.   After conducting searches for prior art during the examination of the '731 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 3,669,288, 06/1972, Young; (ii) US 5,317,323, 05/1994, Kennedy et al.; (iii) "Envirokare announces letter of intent with Electroship . . ." 2 page Envirokare press release dated Jul. 25, 2000"; (iv) US 5,825,283, 10/1998, Camhi; (v) US 6,044,990, 04/2000, Palmeri; (vi) US 6,464,142, 10/2002, Denenberg et al.; (vii) US 2002/0017996, 02/2002, Niemiec; (viii) FR 2816434, 05/2002, Touzet; (ix) US 5,877,707, 03/1999, Kowalick; (x) US 5,917,405, 06/1999, Joao; (xi) US 5,917,434, 06/1999, Murphy; (xii) US 6,046,678, 04/2000, Wilk; (xiii) US 6,148,291, 11/2000, Radican; (xiv) US 6,281,797, 08/2001, Forster et al.; (xv) US 6,292,828, 09/2001, Williams; (xvi) US 6,332,098, 12/2001, Ross et al.; (xviii) US 6,474,927, 11/2002, McAdams et al.; (xix) US 6,542,076, 04/2003, Joao; (xx) US 6,542,077, 04/2003, Joao; (xxi) US 6,549,130, 04/2003, Joao; (xxii) US 6,587,046, 07/2003, Joao; (xxiii) US 6,610,954, 08/2003, Takizawa; (xxiv) US 6,844,473, 01/2005, Quinlin et al.; (xxv) US 2002/0016655, 02/2002, Joao; (xxvi) US 2002/0049622, 04/2002, Lettich et al.; (xxvi) US 2002/0049622, 04/2002, Lettich et al.; (xxvii) US 2002/0116318, 08/2002, Thomas et al.; (xxviii) US 2002/0121969, 09/2002, Joao; (xxix) US 2002/0198774, 12/2002, Weirich; (xxx) US 2003/0009361, 01/2003, Hancock et al.; (xxxi) US 2003/0016130, 01/2003, Joao; (xxxii) US 2003/0067541, 04/2003, Joao; (xxxiii) US 2003/0071899, 04/2003, Joao; (xxxiv) US 2003/0084125, 05/2003, Nagda et al.; (xxxv) US 2003/0193404, 10/2003, Joao; (xxxvi) US 2003/0206102, 11/2003, Joao; (xxxvii)

US 2004/0160319, 08/2004, Joao; (xxxviii) US 2004/0230601, 11/2004, Joao; (xxxix) US 2005/0171835, 08/2005, Mook et al.; (xxxx) US 2005/0248444, 11/2005, Joao; (xxxxi) "Technology Executive . . . joins Envirokare as president and Director", 2 page Envirokare press release dated Sep. 5, 2000; and (xxxxii) "Envirokare Tech Inc. announces additions to advisory board", 3 page Envirokare press release dated Sep. 7, 2000.

24.   After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '731 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *See K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

25.   The '731 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

26.   The '920 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '920 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 340/539.11, 340/568.1 and 340/572.1.

27.   After conducting searches for prior art during the examination of the '731 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,825,283, 10/1998, Camhi; (ii) US 6,046,678,

04/2000, Wilk; (iii) US 6,148,291, 11/2000, Radican; (iv) US 6,323,782, 11/2001, Stephens et al.; (v) US 6,429,810, 08/2002, De Roche; (vi) US 6,610,954, 08/2003, Takizawa; (vii) US 6,745,027, 06/2004, Twitchell, Jr.; and (viii) US 6,882,269, 04/2005, Moreno.

28.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '920 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *See K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

29.    The '920 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

30.    The '029 Patent was examined by Primary United States Patent Examiner Van T. Trieu.  During the examination of the '029 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G08G 1/20, G01S 13/84, G06Q 10/08, G06Q 10/087, G08B 1/08, G08G 1/202, G08G 1/205, H04W 4/02, and H04W 4/021.

31.    After conducting searches for prior art during the examination of the '029 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,640,002, 06/1997, Ruppert et al.; (ii) US 5,825,283, 10/1998, Camhi; (iii) US 5,959,568, 09/1999, Woolley; (iv) US 6,046,678,

04/2000, Wilk; (v) US 6,148,291, 11/2000, Radican; (vi) US 6,281,797, 08/2001, Forster et al.; (vii) US 6,304,856, 10/2001, Soga; (viii) US 6,356,802, 03/2002, Takehara; (ix) US 6,411,891, 06/2002, Jones; (x) US 6,429,810, 08/2002, De Roche; (xi) US 6,610,954, 08/2003, Takizawa; (xii) US 6,745,027, 06/2004, Twitchell, Jr.; (xiii) US 6,748,318, 06/2004, Jones; (xiv) US 6,859,722, 02/2005, Jones; (xv) US 6,882,269, 04/2005, Moreno; (xvi) US 6,904,359, 06/2005, Jones; (xvii) US 7,035,856, 04/2006, Morimoto; (xviii) US 7,085,775, 08/2006, Short et al.; (xix) US 7,212,829, 05/2007, Lau et al.; (xxi) US 2002/0046173, 04/2002, Kelly; (xxii) US 2002/0061758, 05/2002, Zarlengo et al.; (xxiii) US 2002/0120475, 08/2002, Morimoto; and (xxiv) US 2002/0132855, 07/2003, Swan.

32.  After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '029 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

33.  The '029 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

34.  The '109 Patent was examined by Primary United States Patent Examiner Van T. Trieu.  During the examination of the '109 Patent, the United States Patent Examiner searched for

prior art in the following US Classifications: G06Q 10/08, G06Q 10/083, G06Q 10/087, H04W 4/02, and H04W 4/021.

35.    After conducting searches for prior art during the examination of the '109 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,959,568, 09/1999, Woolley; (ii) US 7,035,856, 04/2006, Morimoto; (iii) US 7,212,829, 05/2007, Lau et al.; (iv) US 7,253,731, 08/2007, Joao; (v) US 9,847,029, 12/2017, Joao; and (vi) US 2002/0120475, 08/2002, Morimoto.

36.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '109 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *See K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

37.    The '109 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

38.    The '268 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '268 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G06Q 10/08 and G06Q 10/083.

39.   After conducting searches for prior art during the examination of the '268 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,959,568, 09/1999, Woolley; (ii) US 6,148,291, 1/2000, Radican; (iii) US 6,492,904, 12/2002, Richards; (iv) US 7,035,856, 04/2006, Morimoto; (v) US 10,181,109, 01/2019, Joao; and (vi) US 2002/0111819, 08/2002, Li.

40.   After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '268 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *See K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

41.   The '268 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

42.   The claims of the Transcend Patents were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration.  *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.'  Much to the contrary, a patent does have value beyond its expiration date.  For example, an expired patent may form

the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

43.     The expiration dates of the Transcend Patents are as follows: the '920 Patent expires no earlier than April 27, 2022; the '029 Patent expires no earlier than November 1, 2023; the '109 and '268 Patents expire no earlier than January 22, 2022; and the '731 Patent expired on August 7, 2019.

## ACCUSED INSTRUMENTALITIES

44.     Upon information and belief, ZIM sells, advertises, offers for sale, uses, or otherwise provides smart containers ("shipment conveyance devices") for shipping and/or delivering goods, products, items, and/or other objects that infringe the Transcend Patents ("Accused Instrumentalities").

## COUNT I

### (Infringement of U.S. Patent No. 10,181,109)

45.     Plaintiff incorporates the above paragraphs by reference.

46.     ZIM has been on actual notice of the '109 Patent at least as early as the date it received service of this Original Complaint.

47.     On information and belief, ZIM owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

48.     Upon information and belief, ZIM has directly infringed and continues to directly infringe at least claims 1, 8, 10, 13 and 14 of the '109 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

49.   ZIM, with knowledge of the '109 Patent, also infringes at least claims 1, 8, 10 and 14 of the '109 Patent by inducing others to infringe the '109 Patent.  In particular, ZIM intends to induce its customers to infringe the '109 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

50.   ZIM also induces others, including its customers, to infringe at least claims 1, 8, 10 and 14 of the '109 Patent by providing technical support for the use of the Accused Instrumentalities.

51.   Upon information and belief, ZIM makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a shipping container, a pallet, or a piece of luggage.  For example, ZIM provides shipping containers ("shipment conveyance devices") for shipping and/or delivering goods, products, items, and/or other objects that are equipped with monitoring devices (e.g., sensors) that monitor certain parameters in the container.  See Figures 2-6 below, which are screenshots of webpages associated with ZIM.

---

**Reefer Cargo**

Whether you're shipping vaccines or vegetables, ZIM's refrigerated containers are equipped to provide advanced transport you can rely on. Fruit, meat, medicines, and other frozen or refrigerated cargo all require precise temperature monitoring and expert care to maintain the cold chain and ensure complete safety. That's why ZIM has developed unique technologies to ensure that our reefer container transportation is as secure, reliable, and efficient as possible. Our cutting-edge ZIMonitor system lets you stay on top of your cargo's route, humidity, temperature, and even unexpected door openings in real time. It is a vital tool for monitoring any type of sensitive or high value cargo, cutting down on potential problems, time, and worry.

Delicate reefer cargo demands specific, hard-earned expertise. From port, throughout the voyage, and across land to the final destination, ZIM's experienced professional team provides personal support, carefully analyzing and overseeing the needs of each cargo. Traversing crucial, niche trades throughout the world, we offer you first-class service and easy entry into expanding markets.

---

Figure 2[2]

---

[2] Source, as visited on March 30, 2021:  https://www.zim.com/services/cargo-services/reefer-cargo

**ZIMonitor**

From location to temperature, ZIM's groundbreaking new application puts all your containers' information right at your fingertips.

ZIMonitor gives you the precise professional tools you need to track, monitor, and even control your cargo's environment from start to finish. We understand that our customers always want to know more, especially when shipping sensitive, high-value, or reefer cargo. Now you can monitor cargo of all kinds and receive immediate notifications if any changes occur.

Figure 3[3]

**System Alerts Include:**

- Temperature monitoring
- Humidity monitoring
- Power on/off alerts
- Unauthorized door opening alerts
- GPS monitoring (route deviations)

Figure 4[4]

**GPS Container Tracking**

Today's accelerated growth in the global demand for pharmaceutical, medical and food products makes the cold chain more vital than ever before. Transportation of temperature-sensitive, high-value cargo substantially increases the complexity of cold-chain shipping because the goods must be controlled and monitored at all times, from source to destination. This involves tracking not only a shipment's location, but also its temperature, security, and condition.

**What Does Technology Offer Today?**

There are various shipment monitoring technologies currently in use, ranging from temperature recorders to radio-frequency identification (RFID). However, advances in cellular and satellite communications (and lower costs) are now enabling modern shippers to monitor their shipments in real time, no matter where they are in the world.

Modern Global Positioning System (GPS) technology collects data about coordinates, direction, speed and more from any vessel transporting goods. This crucial data is then transmitted to service personnel or cold-chain managers so that they can have a 360° perspective of their shipments, 24/7.

Reefers equipped with these GPS devices can provide metrics including the time of departure and arrival at the destination, current location, temperature, humidity, and security in high-risk areas. All this information is received in real time, and reports can be generated to obtain a minute-by-minute view of a journey whenever the need arises.

The result is that cold-chain managers gain the crucial information they need. But it's not enough to provide real peace of mind.

Figure 5[5]

---

[3] Source, as visited on March 30, 2021:  https://www.zim.com/services/digital-services/zimonitor
[4] Source, as visited on March 30, 2021:  https://www.zim.com/services/digital-services/zimonitor

> **ZIMonitor** provides end-to-end reefer tracking from source to destination, including:
>
> - Route deviations (changes in set point temperature)
> - Power on/off – alert notification if the reefer is disconnected from the electrical supply for more than two hours
> - Supply and return temperatures, including thresholds and humidity
> - Immediate alert in case of unauthorized door opening (door sensor)
> - Real-time data collection and monitoring, with comprehensive end-of-voyage reports

Figure 6[6]

52.     Upon information and belief, ZIM provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device. For example, ZIM equips its shipping containers with a ZIMonitor system that uses monitoring devices, including a global positioning device. Further, ZIM provides an online platform which is used by customers to track and trace their cargo.  See Figures 2-6 above. See also Figures 7-9 below, which are screenshots of webpages associated with ZIM.

> **What is ZIMonitor?**                                                    ⌄
>
> ZIMonitor is an innovative service offered exclusively by ZIM, allowing you to track, monitor and control your containers remotely. With a response team at your service 24/7, ZIMonitor provides total peace of mind and real-time intervention to prevent all kinds of damage. The service suits all types of sensitive or high value cargo, and allows for an unprecedented level of safety and protection.

Figure 7[7]

---

[5] Source, as visited on March 30, 2021:  https://www.zim.com/services/digital-services/zimonitor/gps-container-tracking
[6] Source, as visited on March 30, 2021:  https://www.zim.com/services/digital-services/zimonitor/gps-container-tracking
[7] Source, as visited on March 30, 2021: https://www.zim.com/services/digital-services/zimonitor/zimonitor-faq

**How does it work?**

ZIMonitor employs the most advanced technology available in the market alongside ZIM's professional teams, creating a comprehensive way to oversee sensitive cargo throughout transportation.

The ZIMonitor system sends data and real-time alerts at every shipping stage. It enables customers to control container settings remotely and ensures rapid professional intervention in ports, to prevent cargo damage. The alerts are sent via a user-friendly interface by text message (SMS) or email, according to customer preference, and ZIM's response team is available 24/7.

Figure 8[8]

**What alerts will I receive and what can I control remotely?**

The system sends alerts when there are changes in a container's temperature or humidity, or when it detects unauthorized door opening. It also tracks the container's route via GPS, and sends an alert when the ship has traveled a certain distance away from its planned route.

Customers can modify or reset the container's settings, including transportation, from anywhere in the world.

Figure 9[9]

53.     Upon information and belief, ZIM provides a processor, wherein the processor generates a message in response to an occurrence of the event or in response to a request for information regarding the shipment conveyance device, wherein the request for information is automatically received by the receiver, wherein the message contains information regarding a position or location of the shipment conveyance device. For example, ZIM's shipping containers are fitted with monitoring devices ("processing devices") which measure information related to the shipping container, including one or more of, but not limited to, temperature, humidity and unauthorized door opening and sends that information to ZIM's central servers. Therefore, ZIM provides a processor which processes information regarding

---

[8] Source, as visited on March 30, 2021: https://www.zim.com/services/digital-services/zimonitor/zimonitor-faq
[9] Source, as visited on March 30, 2021: https://www.zim.com/services/digital-services/zimonitor/zimonitor-faq

the shipment conveyance device. As a further example, ZIM's shipping containers equipped with monitoring devices detect an event including one or more of, but not limited to, temperature, humidity and unauthorized door opening and, in response to the detected event, send alerts ("message") containing information about the event to the customers of ZIM. Therefore, ZIM provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, ZIM's shipping containers, fitted with monitoring devices, measure information using sensors including one or more of, but not limited to, a humidity sensor and a temperature sensor, and transmit information in the form of alerts to ZIM's customers after a request for information is received by ZIM automatically. Therefore, ZIM provides a receiver which receives a request for information automatically. See Figures 2-9 above.

54.   Upon information and belief, ZIM provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device, a receiver of the shipment conveyance device, or an individual authorized to receive the message.   For example, ZIM's shipping containers ("shipment conveyance device"), fitted with monitoring devices, send information ("message") including one or more of, but not limited to, location, temperature, humidity and unauthorized door opening to ZIM's customers. As a result, the customers monitor their shipments present in the shipping containers. Therefore, ZIM provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message. See Figures 2-9 above.

55.    Upon information and belief, ZIM provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.  For example, ZIM's shipping containers equipped with monitoring devices include at least one or more of, but not limited to, a temperature sensor, a humidity sensor and a door sensor for measuring at least one or more of, but not limited to, temperature and humidity experienced by the shipping container during transportation. Therefore, ZIM's shipping containers fitted with monitoring devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature and humidity experienced by the shipment conveyance device. See Figures 2-9 above.

56.    Upon information and belief, ZIM also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device. For example, ZIM's shipping containers, fitted with monitoring devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to ZIM's customers. Therefore, ZIM provides a message which contains information regarding temperature of shipment and a change in shipment temperature. See Figures 2-9 above.

57.    Upon information and belief, ZIM further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device.  For example, upon information and belief ZIM's shipping containers equipped with monitoring

devices store geofencing parameters allowing ZIM and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, ZIM's shipping containers equipped with monitoring devices detect events related to deviation from a pre-determined transportation route. See Figures 6 and 9 above.

58.  Upon information and belief, ZIM further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage is a refrigerated container, a heated container, or an insulated container.  For example, ZIM's shipping containers include refrigerated reefer containers. See Figure 2 above.

59.  To the extent ZIM continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '109 Patent, such infringement is necessarily willful and deliberate.

60.  On information and belief, ZIM has a policy or practice of not reviewing the patents of others.  Further on information and belief, ZIM instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, ZIM has been willfully blind to the patent rights of Plaintiff.

61.  Each of ZIM's aforesaid activities has been without authority and/or license from Plaintiff.

## COUNT II

### (Infringement of U.S. Patent No. 9,847,029)

62.  Plaintiff incorporates the above paragraphs by reference.

63.  ZIM has been on actual notice of the '029 Patent at least as early as the date it received service of this Original Complaint.

64.  On information and belief, ZIM owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

65.     Upon information and belief, ZIM has directly infringed and continues to directly infringe at least Claims 2, 12, 15 and 19 of the '029 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

66.     ZIM, with knowledge of the '029 Patent, also infringes at least Claims 2, 12, 15 and 19 of the '029 Patent by inducing others to infringe the '029 Patent.   In particular, ZIM intends to induce its customers to infringe the '029 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

67.     ZIM also induces others, including its customers, to infringe at least Claims 2, 12, 15 and 19 of the '029 Patent by providing technical support for the use of the Accused Instrumentalities.

68.     As described above (*see* ¶ 51), and upon information and belief, ZIM makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a smart container, a pallet, or a piece of luggage.   For example, ZIM provides shipping containers ("shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are installed with monitoring devices.

69.     As described above (*see* ¶ 52), and upon information and belief, ZIM provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.   For example, ZIM's shipping containers are fitted with a ZIMonitor system that uses monitoring devices, including a global positioning device to determine a position/location of the shipping container.

70.     As described above (*see* ¶ 53), and upon information and belief, ZIM also provides a processor, wherein the processor processes information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, and further wherein the processor generates a message in response to the occurrence of the event or in response to the request for information regarding the shipment conveyance device.  For example, ZIM's shipping containers are fitted with monitoring devices ("processing devices") which measure information related to the shipping container, including one or more of, but not limited to, temperature, humidity and unauthorised door opening, and sends that information to ZIM's central servers. Therefore, ZIM provides a processor which processes information regarding the shipment conveyance device. As a further example, ZIM's shipping containers equipped with monitoring devices detect an event including one or more of, but not limited to, temperature, humidity and unauthorized door opening and, in response to the detected event, send alerts ("message") containing information about the event to the customers of ZIM. Therefore, ZIM provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, ZIM's shipping containers, fitted with monitoring devices, measure information using sensors including one or more of, but not limited to, a humidity sensor and a temperature sensor, and transmit information in the form of alerts to ZIM's customers after a request for information is received by ZIM automatically.

71.     As described above (*see* ¶ 54), and upon information and belief, ZIM provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further

wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device, a receiver of the shipment conveyance device, or an individual authorized to receive the message.  For example, ZIM's shipping containers ("shipment conveyance device"), fitted with monitoring devices, send information ("message") including one or more of, but not limited to, location, temperature, humidity and unauthorized door opening, to ZIM's customers. As a result, the customers monitor their shipments present in the shipping containers. Therefore, ZIM provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

72.    As described above (*see* ¶ 55), and upon information and belief, Defendant provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.  For example, ZIM's shipping containers equipped with monitoring devices include at least one or more of, but not limited to, a temperature sensor, a humidity sensor and a door sensor for measuring at least one or more of, but not limited to, temperature and humidity experienced by the shipping container during transportation. Therefore, ZIM's shipping containers fitted with monitoring devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature and humidity experienced by the shipment conveyance device.

73.    As described above (*see* ¶ 56), and upon information and belief, ZIM also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force

exerted on the shipment conveyance device.  For example, ZIM's shipping containers, fitted with monitoring devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to ZIM's customers.  Therefore, ZIM provides a message which contains information regarding temperature of shipment and a change in shipment temperature.

74.   As described above (*see* ¶ 57), and upon information and belief, ZIM further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device.  For example, upon information and belief ZIM's shipping containers equipped with monitoring devices store geofencing parameters allowing ZIM and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, ZIM's shipping containers equipped with monitoring devices detect events related to deviation from a pre-determined transportation route.

75.   As described above (*see* ¶ 58), and upon information and belief, ZIM further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage is a refrigerated container, a heated container, or an insulated container.  For example, ZIM's shipping containers include refrigerated reefer containers.

76.   To the extent ZIM continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '029 Patent, such infringement is necessarily willful and deliberate.

77.   On information and belief, ZIM has a policy or practice of not reviewing the patents of others.  Further on information and belief, ZIM instructs its employees to not review the

patents of others for clearance or to assess infringement thereof.  As such, ZIM has been willfully blind to the patent rights of Plaintiff.

78.    Each of ZIM's aforesaid activities has been without authority and/or license from Plaintiff.

### COUNT III

### (Infringement of U.S. Patent No. 7,482,920)

79.    Plaintiff incorporates the above paragraphs by reference.

80.    ZIM has been on actual notice of the '920 Patent at least as early as the date it received service of this Original Complaint.

81.    On information and belief, ZIM owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

82.    Upon information and belief, ZIM has directly infringed and continue to directly infringe at least Claims 1, 5, 9, 11 and 16 of the '920 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

83.    ZIM, with knowledge of the '920 Patent, also infringes at least Claims 1, 5, 9, 11 and 16 of the '920 Patent by inducing others to infringe the '920 Patent.  In particular, ZIM intends to induce its customers to infringe the '920 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

84.    ZIM also induces others, including its customers, to infringe at least Claims 1, 5, 9, 11 and 16 of the '920 Patent by providing technical support for the use of the Accused Instrumentalities.

85.    As described above (*see* ¶ 51), and upon information and belief, ZIM makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a smart container, a pallet, or a piece of luggage.  For

example, ZIM provides shipping containers ("shipment conveyance devices") for shipping and/or delivering goods, products, items, and/or other objects that are equipped with monitoring devices (e.g., sensors) that monitor certain parameters in the container.

86.    Upon information and belief, ZIM provides a memory device, wherein the memory device is located in, on, or at, the shipment conveyance device, wherein the memory device stores information regarding a description of a good, product, or item, being shipped or transported via or which is contained in or on the shipment conveyance device, and origination information, sender information, shipper information, destination information, receiver information, handling instruction information, delivery instruction information, invoice information, packing slip information, delivery time information, or payment instruction information, regarding the shipment conveyance device. For example, ZIM's shipping containers are fitted with monitoring devices which comprise sensors including one or more of, but not limited to, a temperature sensor, a humidity sensor and a door sensor for measuring and transmitting information related to one or more of, but not limited to, temperature and humidity experienced by the shipping container ("shipment conveyance device"). As a further example, ZIM's shipping containers equipped with monitoring devices store at least an identification of ZIM (since it communicates position of the container and measurements from the sensors including but not limited to a humidity sensor, a temperature sensor and a door sensor, to a central server), and therefore ZIM provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, ZIM's shipping containers equipped with monitoring devices store at least an identification of ZIM's container (since it communicates position of the container and measurements from the

sensors including but not limited to a humidity sensor, a temperature sensor and a door sensor, to a central server), and therefore ZIM provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, ZIM's shipping containers equipped with monitoring devices store at least an identification of ZIM's customer (since it communicates position of the container and measurements from the sensors present in the container including, but not limited to, a humidity sensor a temperature sensor and a door sensor, to a central server (who may have multiple customers availing ZIM's services at any given time) correlate the information to the particular customer in order to provide updates to the customer), and therefore ZIM provides a memory device which stores at least one or more of origination information, sender information, shipper information, destination information and receiver information regarding the shipment conveyance device. As a further example, ZIM's shipping containers equipped with monitoring devices store at least a description of a good, product, or item, being shipped via the shipment conveyance devices, because they identify the position/location and send the measurements from sensors including, but not limited to, a humidity sensor, a temperature sensor and a door sensor, of each individual shipment to the central server and/or ZIM's customer (who may have multiple shipments in transit at a given time). As a further example, ZIM's shipping containers equipped with monitoring devices store measurements from one or more of a humidity sensor, a temperature sensor and a door sensor, and therefore store a description of a good, product, or item, being shipped via the shipment conveyance devices. Further, ZIM's shipping containers equipped with monitoring devices store geofencing parameters allowing ZIM and/or the customer to receive alerts if the shipment conveyance device deviates from

the planned route. Therefore, ZIM's shipping containers equipped with monitoring devices store at least destination information regarding the shipment conveyance devices. Further, ZIM's shipping containers equipped with monitoring devices store measurements and alerts regarding temperature and humidity and other handling parameters – and therefore stores at least handling instruction information for the shipment conveyance devices. See Figures 2-9 above.

87.     As described above (*see* ¶ 52), and upon information and belief, ZIM provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.   For example, ZIM equips its shipping containers with monitoring devices that include a global positioning device. Further, ZIM provides an online platform which is used by customers to track and trace their cargo.   See Figures 2-9 above.

88.     As described above (*see* ¶ 53), and upon information and belief, ZIM also provides a processing device, wherein the processing device processes information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, wherein the processing device generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or a transportation of or involving the shipment conveyance device, a shipment or transportation temperature, or an impact or force on the shipment conveyance device.   For example, ZIM's shipping containers are fitted with monitoring devices ("processing devices") which measure information related to the shipping container, including one or

more of, but not limited to, temperature, humidity and unauthorized door opening and sends that information to ZIM's central servers. Therefore, ZIM provides a processor which processes information regarding the shipment conveyance device. As a further example, ZIM's shipping containers equipped with monitoring devices detect an event including one or more of, but not limited to, temperature, humidity and unauthorized door opening and, in response to the detected event, send alerts ("message") containing information about the event to the customers of ZIM. Therefore, ZIM provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, ZIM's shipping containers, fitted with monitoring devices, measure information using sensors including one or more of, but not limited to, a humidity sensor, a temperature sensor and a door sensor, and transmit information in the form of alerts to ZIM's customers after a request for information is received by ZIM automatically.

89.     As described above (*see* ¶ 54), and upon information and belief, ZIM provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, wherein the transmitter transmits the message to a communication device associated with an individual or entity, a sender of the shipment conveyance device, a receiver of the shipment conveyance device, a carrier of the shipment conveyance device, or an individual or entity authorized to receive information regarding the shipment conveyance device or information regarding a shipment or a transportation of or involving the shipment conveyance device.  For example, ZIM's shipping containers ("shipment conveyance device"), fitted with monitoring devices, send information ("message") including one or more of, but not limited to, location, temperature and humidity, to ZIM's customers. As a result, the customers monitor their

shipments present in the shipping containers. Therefore, ZIM provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

90.   As described above (*see* ¶ 55), and upon information and belief, ZIM provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or the transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.  For example, ZIM's shipping containers equipped with monitoring devices include at least one or more of, but not limited to, a temperature sensor, a humidity sensor and a door sensor for measuring at least one or more of, but not limited to, temperature, humidity and door opening experienced by the shipping container during transportation. Therefore, ZIM's shipping containers fitted with monitoring devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, humidity and door opening experienced by the shipment conveyance device.

91.   As described above (*see* ¶ 56), and upon information and belief, ZIM also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.  For example, ZIM's shipping containers, fitted with monitoring devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to ZIM's customers. Therefore, ZIM provides a message which contains information regarding temperature of shipment and a change in shipment temperature.

92.     As described above (*see* ¶ 57), and upon information and belief, ZIM further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with the shipment or a transportation of or involving the shipment conveyance device.  For example, upon information and belief ZIM's shipping containers equipped with monitoring devices store geofencing parameters allowing ZIM and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, ZIM's shipping containers equipped with monitoring devices detect events related to deviation from a pre-determined transportation route.

93.     Upon information and belief, ZIM further provides an apparatus wherein the event is a detection of a shipment or transportation temperature which deviates from a shipment or transportation temperature requirement. For example, ZIM's shipping containers equipped with monitoring devices transmit alerts to ZIM's customers when the temperature in the container is detected beyond a threshold, and therefore, detects events including, but not limited to, deviation in shipment temperature. See Figures 6 and 9 above.

94.     As described above (*see* ¶ 58), and upon information and belief, ZIM further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage, or the tote is a refrigerated container, a heated container, or an insulated container.  For example, ZIM's shipping containers include refrigerated reefer containers.

95.     To the extent ZIM continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '920 Patent, such infringement is necessarily willful and deliberate.

96.     On information and belief, ZIM has a policy or practice of not reviewing the patents of others.  Further on information and belief, ZIM instructs its employees to not review the

patents of others for clearance or to assess infringement thereof.  As such, ZIM has been willfully blind to the patent rights of Plaintiff.

97.  Each of ZIM's aforesaid activities has been without authority and/or license from Plaintiff.

## COUNT IV

### (Infringement of U.S. Patent No. 10,796,268)

98.  Plaintiff incorporates the above paragraphs by reference.

99.  ZIM has been on actual notice of the '268 Patent at least as early as the date it received service of this Original Complaint.

100.  On information and belief, ZIM owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

101.  Upon information and belief, ZIM has directly infringed and continue to directly infringe at least Claims 1, 8 , 10 and 12 of the '268 Patent by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.

102.  ZIM, with knowledge of the '268 Patent, also infringes at least Claims 1, 8 , 10 and 12 of the '268 Patent by inducing others to infringe the '268 Patent.  In particular, ZIM intends to induce its customers to infringe the '268 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

103.  ZIM also induces others, including its customers, to infringe at least Claims 1, 8 , 10 and 12 of the '268 Patent by providing technical support for the use of the Accused Instrumentalities.

104.  As described above (*see* ¶ 51), and upon information and belief, ZIM makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a shipping container, a pallet, or a piece of luggage.  For

example, ZIM provides shipping containers ("shipment conveyance devices") for shipping and/or delivering goods, products, items, and/or other objects that are equipped with monitoring devices (e.g., sensors) that monitor certain parameters in the container.

105.   As described above (*see* ¶ 52), and upon information and belief, ZIM provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.   For example, ZIM equips its shipping containers with a ZIMonitor system that uses monitoring devices that include a global positioning device.

106.   As described above (*see* ¶ 53), and upon information and belief, ZIM also provides a processor, wherein the processor generates a message in response to an occurrence of an event, or in response to a request for information regarding the shipment conveyance device which is automatically received by a receiver, wherein the message contains information regarding a shipment of the shipment conveyance device.   For example, ZIM's shipping containers are fitted with monitoring devices ("processing devices") which measure information related to the shipping container, including one or more of, but not limited to, temperature, humidity and unauthorized door opening and sends that information to ZIM's central servers. Therefore, ZIM provides a processor which processes information regarding the shipment conveyance device. As a further example, ZIM's shipping containers equipped with monitoring devices detect an event including one or more of, but not limited to, temperature, humidity and unauthorized door opening and, in response to the detected event, send alerts ("message") containing information about the event to the customers of ZIM. Therefore, ZIM provides a processor which generates a message in response to occurrence of

an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, ZIM's shipping containers, fitted with monitoring devices, measure information using sensors including one or more of, but not limited to, a humidity sensor, a temperature sensor and a door sensor, and transmit information in the form of alerts to ZIM's customers after a request for information is received by ZIM automatically. Therefore, ZIM provides a receiver which receives a request for information automatically.

107.    As described above (*see* ¶ 54), and upon information and belief, ZIM provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message. For example, ZIM's shipping containers ("shipment conveyance device"), fitted with monitoring devices, send information ("message") including one or more of, but not limited to, location, temperature and humidity, to ZIM's customers. As a result, the customers monitor their shipments present in the shipping containers. Therefore, ZIM provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

108.    As described above (*see* ¶ 55), and upon information and belief, ZIM provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.  For example, ZIM's shipping containers equipped with monitoring devices include at least one or more of, but not limited to, a temperature sensor, a humidity

sensor and a door sensor for measuring at least one or more of, but not limited to, temperature and humidity experienced by the shipping container during transportation. Therefore, ZIM's shipping containers fitted with monitoring devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature and humidity experienced by the shipment conveyance device.

109.   As described above (*see* ¶ 56), and upon information and belief, ZIM also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.  For example, ZIM's shipping containers, fitted with monitoring devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to ZIM's customers. Therefore, ZIM provides a message which contains information regarding temperature of shipment and a change in shipment temperature.

110.   As described above (*see* ¶ 56), and upon information and belief, ZIM further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device. For example, upon information and belief ZIM's shipping containers equipped with monitoring devices store geofencing parameters allowing ZIM and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, ZIM's shipping containers equipped with monitoring devices detect events related to deviation from a pre-determined transportation route.

111.   As described above (*see* ¶ 58), and upon information and belief, ZIM further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage is a refrigerated

container, a heated container, or an insulated container.   For example, ZIM's shipping containers include refrigerated reefer containers.

112.   To the extent ZIM continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '268 Patent, such infringement is necessarily willful and deliberate.

113.   On information and belief, ZIM has a policy or practice of not reviewing the patents of others.   Further on information and belief, ZIM instructs its employees to not review the patents of others for clearance or to assess infringement thereof.   As such, ZIM has been willfully blind to the patent rights of Plaintiff.

114.   Each of ZIM's aforesaid activities has been without authority and/or license from Plaintiff.

## COUNT V

### (Infringement of U.S. Patent No. 7,253,731)

115.   Plaintiff incorporates the above paragraphs by reference.

116.   ZIM has been on actual notice of the '731 Patent at least as early as the date it received service of this Original Complaint.

117.   The '731 Patent is enforceable and is infringe by ZIM from March 30, 2015 to August 7, 2019.

118.   On information and belief, ZIM owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

119.   Upon information and belief, ZIM has directly infringed and continue to directly infringe at least Claims 1, 5, 9, 11 and 16 of the '731 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

120.   ZIM, with knowledge of the '731 Patent, also infringes at least Claims 1, 5, 9, 11 and 16 of the '731 Patent by inducing others to infringe the '731 Patent.  In particular, ZIM intends to induce its customers to infringe the '731 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

121.   ZIM also induces others, including its customers, to infringe at least Claims 1, 5, 9, 11 and 16 of the '268 Patent by providing technical support for the use of the Accused Instrumentalities.

122.   As described above (*see* ¶ 51), and upon information and belief, ZIM makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is associated with a shipment, and further wherein the shipment conveyance device is at least one of a shipping container, a pallet, and a tote.  For example, ZIM provides shipping containers ("shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are installed with monitoring devices.

123.   As described above (*see* ¶ 86), and upon information and belief, ZIM provides a memory device, wherein the memory device is located in, on, or at, the shipment conveyance device, wherein information regarding the shipment is stored in the memory device, and further wherein the information regarding the shipment includes a description of a good, product, or item, being shipped or transported via the shipment conveyance device, and at least one of origination information, sender information, shipper information, destination information, receiver information, handling instruction information, delivery instruction information, invoice information, packing slip information, delivery time information, and payment instruction information, regarding the shipment. For example, ZIM's shipping containers are

fitted with monitoring devices which comprise sensors including one or more of, but not limited to, a temperature sensor, a humidity sensor and a door sensor for measuring and transmitting information related to one or more of, but not limited to, temperature and humidity experienced by the shipping container ("shipment conveyance device"). As a further example, ZIM's shipping containers equipped with monitoring devices store at least an identification of ZIM (since it communicates position of the container and measurements from the sensors including but not limited to humidity sensor and temperature sensor, to a central server), and therefore ZIM provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, ZIM's shipping containers equipped with monitoring devices store at least an identification of ZIM's container (since it communicates position of the container and measurements from the sensors including but not limited to a humidity sensor, a temperature sensor and a door sensor, to a central server), and therefore ZIM provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, ZIM's shipping containers equipped with monitoring devices store at least an identification of ZIM's customer (since it communicates position of the container and measurements from the sensors present in the container including, but not limited to, a humidity sensor, a temperature sensor and a door sensor, to a central server (who may have multiple customers availing ZIM's services at any given time) correlate the information to the particular customer in order to provide updates to the customer), and therefore ZIM provides a memory device which stores at least one or more of origination information, sender information, shipper information, destination information and receiver information

regarding the shipment conveyance device. As a further example, ZIM's shipping containers equipped with monitoring devices store at least a description of a good, product, or item, being shipped via the shipment conveyance devices, because they identify the position/location and send the measurements from sensors including, but not limited to, a humidity sensor, a temperature sensor and a door sensor, of each individual shipment to the central server and/or ZIM's customer (who may have multiple shipments in transit at a given time). As a further example, ZIM's shipping containers equipped with monitoring devices store measurements from one or more of a humidity sensor, a temperature sensor and a door sensor, and therefore store a description of a good, product, or item, being shipped via the shipment conveyance devices. Further, ZIM's shipping containers equipped with monitoring devices store geofencing parameters allowing ZIM and/or the customer to receive alerts if the shipment conveyance device deviates from the planned route. Therefore, ZIM's shipping containers equipped with monitoring devices store at least destination information regarding the shipment conveyance devices. Further, ZIM's shipping containers equipped with monitoring devices store measurements and alerts regarding temperature and humidity and other handling parameters – and therefore stores at least handling instruction information for the shipment conveyance devices.

124. As described above (*see* ¶ 52), and upon information and belief, ZIM provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.  For example, ZIM's shipping containers are fitted with a ZIMonitor system that uses monitoring devices, including a global positioning device to determine a position/location of the shipping container.

125.   As described above (*see* ¶¶ 53, 55 and 56), and upon information and belief, ZIM also provides a processing device, wherein the processing device processes at least one of information regarding the shipment and information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment or the shipment conveyance device, wherein the processing device generates a message containing information regarding the position or location of the shipment or the shipment conveyance device and information regarding at least one of the occurrence of an event, a status of the shipment, a shipment temperature, and an impact or force on the shipment conveyance device.  For example, ZIM's shipping containers are fitted with monitoring devices ("processing devices") which measure information related to the shipping container, including one or more of, but not limited to, temperature, humidity and unauthorized door opening and sends that information to ZIM's central servers. Therefore, ZIM provides a processor which processes information regarding the shipment conveyance device. As a further example, ZIM's shipping containers equipped with monitoring devices detect an event including one or more of, but not limited to, temperature, humidity and unauthorized door opening and, in response to the detected event, send alerts ("message") containing information about the event to the customers of ZIM. Therefore, ZIM provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, ZIM's shipping containers, fitted with monitoring devices, measure information using sensors including one or more of, but not limited to, a humidity sensor, a temperature sensor and a door sensor, and transmit information in the form of alerts to ZIM's customers after a request for information is received by ZIM automatically. As a further

example, ZIM's shipping containers equipped with monitoring devices include at least one or more of, but not limited to, a temperature sensor, a humidity sensor and a door sensor for measuring at least one or more of, but not limited to, temperature and humidity experienced by the shipping container during transportation. Therefore, ZIM's shipping containers fitted with monitoring devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature and humidity experienced by the shipment conveyance device. As a further example, ZIM's shipping containers, fitted with monitoring devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to ZIM's customers. Therefore, ZIM provides a message that contains information regarding temperature of shipment and a change in shipment temperature.

126.   As described above (*see* ¶ 54), and upon information and belief, ZIM provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with at least one of an individual or entity, a sender of the shipment, a receiver of the shipment, a carrier of the shipment, and an individual or entity authorized to receive information regarding the shipment or the shipment conveyance device.  For example, ZIM's shipping containers ("shipment conveyance device"), fitted with monitoring devices, send information ("message") including one or more of, but not limited to, location, temperature and humidity, to ZIM's customers. As a result, the customers monitor their shipments present in the shipping containers. Therefore, ZIM provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

127.   As described above (*see* ¶ 55), and upon information and belief, ZIM provides a sensor, wherein the sensor monitors or measures at least one of a temperature during shipment, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, and a force exerted on the shipment conveyance device.  For example, ZIM's shipping containers equipped with monitoring devices include at least one or more of, but not limited to, a temperature sensor, a humidity sensor and a door sensor for measuring at least one or more of, but not limited to, temperature and humidity experienced by the shipping container during transportation. Therefore, ZIM's shipping containers fitted with monitoring devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature and humidity experienced by the shipment conveyance device.

128.   As described above (*see* ¶ 55), and upon information and belief, ZIM also provides a message which contains information regarding at least one of a temperature of the shipment, a change in a shipment temperature, and an impact or force exerted on the shipment conveyance device.  For example, ZIM's shipping containers, fitted with monitoring devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to ZIM's customers.  Therefore, ZIM provides a message that contains information regarding temperature of shipment and a change in shipment temperature.

129.   As described above (*see* ¶ 57), and upon information and belief, ZIM further provides an apparatus wherein the event is a detection of a deviation from a pre-determined transportation route associated with the shipment.  For example, upon information and belief ZIM's shipping containers equipped with monitoring devices store geofencing parameters allowing ZIM and/or the customer to receive alerts if the shipping container deviates from

the planned route. Therefore, ZIM's shipping containers equipped with monitoring devices detect events related to deviation from a pre-determined transportation route.

130. As described above (*see* ¶ 93), and upon information and belief, ZIM further provides an apparatus wherein the event is a detection of a shipment temperature, which deviates from a shipment temperature requirement. For example, ZIM's shipping containers equipped with monitoring devices transmit alerts to ZIM's customers when the temperature in the container is detected beyond a threshold, and therefore, detects events including, but not limited to, deviation in shipment temperature.

131. To the extent ZIM continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '731 Patent, such infringement is necessarily willful and deliberate.

132. On information and belief, ZIM has a policy or practice of not reviewing the patents of others.  Further on information and belief, ZIM instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, ZIM has been willfully blind to the patent rights of Plaintiff.

133. Each of ZIM's aforesaid activities has been without authority and/or license from Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Transcend respectfully requests the Court enter judgment against ZIM:

1. Declaring that ZIM has infringed each of the Transcend Patents;

2. Declaring that ZIM's infringement of each of the Transcend Patents has been willful and deliberate;

3.      Awarding Transcend compensatory damages as a result of ZIM's infringement of the Transcend Patents;

4.      Awarding Transcend treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of ZIM's willful and deliberate infringement of the Transcend Patents;

5.      Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining ZIM from further acts of infringement with respect to the Transcend Patents;

6.      Awarding Transcend its costs, attorneys' fees, expenses, and interest;

7.      Awarding Transcend ongoing post-trial royalties; and

8.      Granting Transcend such further relief as the Court finds appropriate.


## JURY DEMAND

Transcend demands trial by jury, under Fed. R. Civ. P. 38.

Dated:  March 30, 2021

Respectfully Submitted

*/s/ René A. Vazquez*
René A. Vazquez
Virginia Bar No. 41988
rvazquez@ghiplaw.com
Randall T. Garteiser
Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Thomas Fasone III
Texas Bar No. 00785382
tfasone@ghiplaw.com
M. Scott Fuller
Texas Bar No. 24036607
sfuller@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**ATTORNEYS FOR
TRANSCEND LLC**